UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-48-S

PATRICIA L. HARTMAN                                                                                       PLAINTIFF

V.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                                    DEFENDANT

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION**

Patricia Hartman filed this action pursuant to 42 U.S.C. §405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied her application for disability insurance and supplemental security income benefits.  Ms. Hartman asserts that the administrative law judge ("ALJ") made several errors in his opinion, but primarily argues that he erred by failing to evaluate whether Ms. Hartman's rheumatoid arthritis met or equaled any impairments among the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and by failing to give appropriate weight to the opinion of her treating specialist.

After reviewing the parties' fact and law summaries (docket nos. 7 and 8) and the administrative record (docket no. 5), the magistrate judge concludes that the ALJ committed reversible error by concluding without any analysis that none of Ms. Hartman's impairments met or equaled a Listed Impairment.[1]  The magistrate judge further concludes that this was not harmless error, and therefore recommends that the district court remand this matter to the Commissioner for further consideration.

---

[1] If a claimant meets or medically equals a condition included in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1, then the claimant is deemed conclusively disabled and entitled to benefits.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416 .920(a)(4)(iii).

## I. BACKGROUND

### A. Procedural History

Ms. Hartman filed applications for disability insurance and supplemental security income benefits in February 2009, alleging that on July 4, 2007, she became disabled as a result of his rheumatoid arthritis and rotator cuff tendonitis.[2] After Ms. Hartman's applications were denied both initially and on reconsideration, she requested and was granted a hearing before an ALJ. Eight days after the hearing,[3] the ALJ issued an opinion in which he stated that none of Ms. Hartman's conditions met or equaled a Listed Impairment, and that Ms. Hartman retained the residual functional capacity to perform sedentary work with certain restrictions, including her past relevant work as a therapist, so she therefore was not disabled.[4] Ms. Hartman timely requested review by the Appeals Council, which denied review. She then timely appealed to this court.

### B. The Five-Step Evaluation Process

In reaching a determination regarding a claimant's disability, an ALJ is required to perform a five-step sequential evaluation process. If the ALJ is able to find that a claimant either is or is not disabled at a particular step, he must not go on to the next step. The five steps are as follows:[5]

  (1) At the first step, the ALJ consider the claimant's work activity, if any. If the claimant is engaged in substantial gainful activity, he is not disabled.

  (2) At the second step, the ALJ consider the medical severity of the claimant's impairments. If there exists no severe medically determinable physical or mental impairment (or combination of impairments) that meets the duration requirement, the claimant is not disabled.

---

[2] Admin. R. at 104-105.
[3] Admin. R. at 32-47.
[4] *See generally* Admin. R. at 24-28.
[5] 20 C.F.R. § 404.1520(a)(4).

>   (3) At the third step, the ALJ also considers the medical severity of the claimant's impairments. If the claimant has an impairment that meets or equals one listed in 20 C.F.R. Pt. 404, Subpt. P, App 1, and meets the duration requirement, the ALJ must find that the claimant is disabled.

Before the ALJ goes from step three to step four, he must assess the claimant's residual functional capacity, which the ALJ then must use at both step four and step five when evaluating the claimant's alleged disability.

>   (4) At the fourth step, the ALJ must consider his assessment of the claimant's residual functional capacity and his past relevant work. If the claimant can still do his past relevant work, the ALJ must find that he is not disabled.

>   (5) At the fifth and last step, the ALJ must consider his assessment of the claimant's residual functional capacity and his age, education, and work experience to see if the claimant can make an adjustment to other work. A claimant who can make an adjustment to other work is not disabled, but one who cannot is disabled.

Ms. Hartman asserts that the ALJ erred at step three, because he failed to determine that Ms. Hartman's rheumatoid arthritis met or equaled a Listed Impairment, and when assessing Ms. Hartman's residual functional capacity, because he failed to give appropriate weight to the opinion of her medical doctor, a specialist who had treated her for years, in favor of the opinion of doctor of osteopathy who examined her once when she was pregnant.[6]

## II. FINDINGS OF FACT

In his opinion, the ALJ found that Ms. Hartman suffers from the severe impairments of "rheumatoid arthritis and rotator cuff tendonitis."[7] Ms. Hartman does not dispute this Finding (Number 3), but asserts that the ALJ's next finding regarding whether any of her impairments met or equaled an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, was erroneous as a matter of law and unsupported by the evidence in the record.

---

[6] Ms. Hartman also asserts that the ALJ erred when he determined that Ms. Hartman exercised five days a week. Because Ms. Hartman provided conflicting testimony regarding her exercise habits, *see* Admin. R. at 43, 397, and because the disability determination is integrally linked to the evaluation of the two principal errors asserted by Ms. Hartman, the magistrate judge did not evaluate any of her comparatively minor allegations of error.

[7] Admin. R. at 24 (Finding No. 3).

In Finding Number 4, the ALJ wrote only two paragraphs. In the first paragraph he stated (in its entirety):

> None of the professional medical opinions of record indicate that the claimant's impairments meet or equal the criteria of a listed impairment, nor does the objective medical evidence of record indicate as much.[8]

The ALJ did not identify which of the listed impairments he considered, set forth their specific criteria, or discuss which evidence in the record supported his determination.

When assessing Ms. Hartman's residual functional capacity, the ALJ reviewed and discussed the opinions of two medical professionals. The first, Aaron Pugh, is a state agency consultant and a doctor of osteopathy.[9] He examined Ms. Hartman once, in early 2009, when she was thirty weeks pregnant with her second child.[10] Dr. Pugh stated that Ms. Hartman's physical exam was within normal limits, but remarked that she had some limitations on her ability to lift and stand.[11] The ALJ afforded his opinion "some weight" when determining Ms. Hartman's residual functional capacity."

The ALJ also reviewed and discussed the opinions of Dr. Paul Schneider, a Board Certified rheumatologist who had been treating Ms. Hartman for four years.[12] Four months before Ms. Hartman's hearing before the ALJ, Dr. Schneider wrote a three-page, single-spaced letter in which he described Ms. Hartman's medical history and treatment, discussed his observations regarding her functional limitations, explained her lack of adequate response to an aggressive treatment regimen, and noted that she would need increased and invasive (an intravenous port) medical intervention and monitoring.[13] He concluded: "At the present time I

---

[8] Admin R. at 26.
[9] Admin. R. at 195.
[10] Admin. R. at 195-97
[11] Admin. R. at 197.
[12] Admin. R. at 385; *see also* Admin. R. at 210-251, 307-308, 360-84 (treatment records).
[13] Admin. R. at 385-87.

believe she is unable to be gainfully employed and feel that her therapy and medical monitoring are such that she would be unable to work an 8-hour day/40-hour week."[14]

The ALJ remarked that Dr. Schneider's opinion that Ms. Hartman was not able to work a 5-day/40-hour week at the present time was "vague," but conceded that "it would be expected that claimant could have some limitations from her above mentioned conditions" and remarked that she had accounted for those limitations in her assessment of Ms. Hartman's residual functional capacity.[15]

### III. STANDARDS OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo,* nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. § 405(g), *Foster v. Comm'r of Soc. Sec.,* 279 F.3d 348, 353 (6th Cir.2001), and whether the ALJ employed the proper legal standards in reaching his conclusion. *Landsaw v. Sec'y of Health and Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

### IV. CONCLUSIONS OF LAW

#### A. The ALJ's Analysis of Whether Ms. Hartman's Impairments Met or Medically Equaled any of the Listed Impairments

The magistrate judge concludes that the ALJ committed an error of law when he failed to provide any analysis or discussion, or even to identify which listings he considered (much less their criteria), in reaching his conclusion that Ms. Hartman did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. In this instance, that failure was not harmless error, and remand is required.

---

[14] Admin. R. at 387.
[15] Admin. R. at 27.

5

As noted above, if a claimant meets or equals one of the Listed Impairments, then the claimant is deemed conclusively disabled and the analysis stops at step three. In this matter, the ALJ concluded at step two of his sequential analysis that Ms. Hartman's rheumatoid arthritis was a severe impairment,[16] as was her obesity, but at the third step of his evaluation, he simply stated: "None of the professional medical opinions of record indicate that the claimant's impairments meet or equal the criteria of a listed impairment, nor does the objective medical evidence of record indicate as much."[17] The ALJ not only failed to identify the listed impairment for which Ms. Hartman might have, but did not qualify (for example, Listing 14.09 – Inflammatory Arthritis), but also failed to provide any analysis or citation to the record in support of his determination that Ms. Hartman's impairments did not meet or medically equal any Listed Impairment. The ALJ merely stated a general conclusion, and that is not enough.

The governing statute is clear that any decision involving "a determination of disability and which is in whole or in part unfavorable ... shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b)(1). Without this level of analysis and explanation, there can be no effective and meaningful judicial review.

Although the Sixth Circuit has not provided any precedential authority on whether it is reversible error for an ALJ to fail to identify which Listed Impairments he considered, or to fail to identify which evidence in the record supports his conclusions, the Sixth Circuit has provided unpublished authority through *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165, *2 (6th Cir. 2011), that constitutes persuasive authority on his topic. *Reynolds* states:

---

[16] Admin. R. at 24.
[17] Admin. R. at 24.

> [A]n ALJ must include a discussion of findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record. The reasons requirement is both a procedural and substantive requirement, necessary in order to facilitate effective and meaningful judicial review.

*Reynolds*, 2011 WL 1228165 at *2 (unpublished decision) (internal citations and quotations omitted). Several sister courts in the Eastern District of Kentucky have recognized and followed that reasoning when determining that a cursory conclusion at step three of the ALJ's analysis will not suffice. *See, e.g., Whitaker v. Comm'r of Soc. Sec.,* 2011 WL 3847502, * 3 (E.D. Ky. 2011)(Hood, J.) *Morgan v. Astrue,* No. 10–207, 2011 WL 2292305, *4 (E.D. Ky. 2011)(Forester, J.)(unpublished decisions). In addition, several Circuit Courts have reached conclusions similar to *Reynolds* in published decisions. *Audler v. Comm'r of Soc. Sec.,* 501 F.3d 446 (5th Cir.2007); *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 120 (3rd Cir.2000); *Clifton v. Comm'r Soc. Sec.*, 79 F.3d 1007, 1009 (10th Cir. 1996); *Cook v. Comm'r Soc. Sec.,* 783 F.2d 1168, 1172–73 (4th Cir. 1986); *Brown v. Comm'r Soc. Sec.,* 794 F.2d 703, 708 (D.C. Cir. 1986).

Following this line of reasoning, the ALJ should have identified which Listed Impairments were considered and compared the available medical evidence with the requirements for those impairments before stating his conclusion. Where, as here, an ALJ offers nothing to support his conclusions at step three, a reviewing court cannot tell whether the ALJ's decision is based on substantial evidence, and the court is thereby deprived of any opportunity to provide meaningful judicial review. The ALJ's analysis at step three was so inadequate that it was erroneous as a matter of law.

However, not all such errors are reversible error. To be reversible, an error must not be harmless. In the instant case, however, the ALJ's opinion does not provide detail sufficient to enable the magistrate judge to determine whether his error was harmless. Listing 14.09

7

(Inflammatory Arthritis) can be met based on several different types of evidence, s*ee* 20 C.F.R. Pt. 404, Subpt. P, App. 1, **§§** 14.09A-D, but because the ALJ did not specify which Listed Impairment he considered, much less which specific criteria he considered, when he determined that "[n]one of the professional medical opinions of record indicate that the claimant's impairments meet or equal the criteria of a listed impairment, nor does the objective medical evidence of record indicate as much."[18] In light of the ALJ's insufficient evidentiary analysis, the magistrate judge would have to resort to speculation to determine whether his error was harmless.

### B. Whether the ALJ Erred by Giving Greater Weight to the Opinion of a State Agency Consultant than Ms. Hartman's Treating Specialist when Determining Ms. Hartman's Residual Functional Capacity

Because the this matter must be reversed and remanded at step three of the required analysis, the court need not address Ms. Hartman's additional argument regarding whether the ALJ erred when determining which medical opinion testimony regarding Ms. Hartman's functional limitations was entitled to greater weight. The magistrate judge notes, however, that the ALJ is not required to adopt from any medical source -- even a highly trained medical doctor specializing in rheumatology with a long-standing treatment relationship with the claimant -- any conclusion reserved for the ALJ (*i.e.*, whether the claimant "is unable to be gainfully employed"[19]). *See* 20 C.F.R. § 404.1527(e).

The magistrate judge also observes that an ALJ could appropriately accept functional limitations suggested by a doctor of osteopathy who evaluated the claimant only one time, and during her third trimester of pregnancy, so long as those suggestions were supported by substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d). In this matter, however, a

---

[18] Admin. R. at 26.
[19] Admin. R. at 387

8

treating specialist provided a detailed, more recent opinion that was based on additional medical observations and data, and he concluded that the recent progression of Ms. Hartman's disease, her failure to respond significantly to aggressive treatment, and the need for increasing monitoring and the placement of an intravenous port for the administration of medicines, would likely cause a significant interference with her ability to perform the necessary tasks of a job. Accordingly, there at least exist questions as to which opinion testimony is adequately supported by the other evidence in the record. *Cf.* 20 C.F.R. § 404.1527(d)(2)-(6).

## V.  RECOMMENDATIONS

Where, as here, an ALJ did not comply with the applicable law, the appropriate remedy is reversal and a remand pursuant to sentence four of 42 U.S.C. § 405(g).  The magistrate judge recommends that the district court remand this matter to the Commissioner of Social Security for an appropriate discussion of the evidence and an explanation of the reasoning supporting any determination that Ms. Hartman's rheumatoid arthritis and rotator cuff tendonitis do not meet or medically equal any Listed Impairment.

**DATE:**

cc:  counsel of record

### NOTICE

Within fourteen (14) days after being served a copy of these proposed findings of fact, conclusions of law, and recommendation, any party who wishes to object must file and serve written objections, or further appeal is waived.  28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).