UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PATRICIA L. HARTMAN																			PLAINTIFF

v.																			CIVIL ACTION NO. 3:12CV-48-S

MICHAEL J. ASTRUE,
Commissioner of Social Security															DEFENDANT

## **MEMORANDUM OPINION**

This matter is before the court for consideration of the Findings of Fact, Conclusions of Law, and Recommendation of the United States Magistrate Judge ("magistrate judge's report") concerning this appeal of an administrative decision of the Commissioner of Social Security.

The plaintiff, Patricia Hartman, filed this action pursuant to 42 U.S.C. § 405(g), for review of the decision denying her application for disability insurance and supplemental security income benefits. She contends that the administrative law judge ("ALJ") who heard her case erred in failing to evaluate whether her rheumatoid arthritis and/or rotator cuff tendonitis met or equaled a Listed Impairment under 20 CFR Pt. 404, Subpt. P, App. 1, and in failing to give appropriate weight to the opinion of her treating rheumatologist.

The magistrate judge considered the parties' fact and law summaries and the administrative record, and concluded that the ALJ committed reversible error by failing to include an analysis of the medical evidence and particular provisions of the Listing of Impairments when he concluded that

Hartman's impairments did not meet or equal a Listed Impairment. The magistrate judge further concluded that this was not harmless error, and recommended that the district court remand the matter to the Commissioner for further consideration.

The Commissioner filed objections to the magistrate judge's report, and Hartman responded to those objections. The matter is presently before the court for consideration of the magistrate judge's report and the objections thereto.

This court has conducted a *de novo* review of those portions of the report to which objection has been made, in accordance with 28 U.S.C. § 636(b)(1)(B). The Commissioner contends that the ALJ complied with the applicable legal standards in the case and that substantial evidence in the record supports the ALJ's decision that Hartman was not disabled. This court agrees with the Commissioner. The court will accept, adopt, and incorporate sections I (Background), II (Findings of Fact), and III (Standards of Review) of the report. However, for the reasons stated herein, the court will reject section IV (Conclusions of Law) and the recommendation that the matter be remanded to the Commissioner of Social Security for further consideration. This opinion will stand in place of the magistrate judge's report.

## I. BACKGROUND

### A. Procedural History

Hartman filed applications for disability insurance and supplemental security income benefits in February 2009, alleging that on July 4, 2007, she became disabled as a result of rheumatoid arthritis and rotator cuff tendonitis.[1] After Hartman's applications were denied, both initially and

---

[1] Admin. R. at 104-105.

on reconsideration, she requested and was granted a hearing before an ALJ. The ALJ issued an opinion in which he found that none of Hartman's severe impairments met or equaled a Listed Impairment, and that Hartman retained the residual functional capacity ("RFC") to perform sedentary work, including her past relevant work as a therapist, with certain restrictions, and was therefore not disabled.[2] Hartman timely requested review by the Appeals Council. Her request was denied. She then timely appealed to this court.

## B. The Five-Step Evaluation Process

In reaching a determination regarding a claimant's disability, an ALJ is required to perform a five-step sequential evaluation process. If the ALJ is able to find that a claimant either is or is not disabled at a particular step, he must not go on to the next step. The five steps are as follows:[3]

(1) At the first step, the ALJ consider the claimant's work activity, if any. If the claimant is engaged in substantial gainful activity, he is not disabled.

(2) At the second step, the ALJ consider the medical severity of the claimant's impairments. If there exists no severe medically determinable physical or mental impairment (or combination of impairments) that meets the duration requirement, the claimant is not disabled.

(3) At the third step, the ALJ also considers the medical severity of the claimant's impairments. If the claimant has an impairment that meets or equals one listed in 20 C.F.R. Pt. 404, Subpt. P, App 1, and meets the duration requirement, the ALJ must find that the claimant is disabled.

Before the ALJ proceeds from step three to step four, he must assess the claimant's residual functional capacity, which the ALJ then must use at both step four and step five when evaluating the claimant's alleged disability.

---

[2] *See generally* Admin. R. at 24-28.

[3] 20 C.F.R. § 404.1520(a)(4).

(4) At the fourth step, the ALJ must consider his assessment of the claimant's residual functional capacity and his past relevant work. If the claimant can still do his past relevant work, the ALJ must find that he is not disabled.

(5) At the fifth and last step, the ALJ must consider his assessment of the claimant's residual functional capacity and his age, education, and work experience to see if the claimant can make an adjustment to other work. A claimant who can make an adjustment to other work is not disabled, but one who cannot is disabled.

Hartman asserts that the ALJ erred (1) at step three, when he failed to find that her rheumatoid arthritis and/or rotator cuff tendonitis met or equaled a Listed Impairment, and (2) when assessing Hartman's residual functional capacity, he failed to give appropriate weight to the opinion of her medical doctor, a specialist who had treated her over a period of years, in favor of the opinion of doctor of osteopathy who examined her only once and at a time when she was pregnant.

## II. FINDINGS OF FACT

The ALJ found that Hartman suffers from the severe impairments of "rheumatoid arthritis and rotator cuff tendonitis."[4] Hartman does not dispute this Finding (Number 3), but asserts that the ALJ's next finding regarding whether any of her impairments met or equaled an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, was erroneous as a matter of law and unsupported by the evidence in the record.

In Finding Number 4, the ALJ wrote only two paragraphs. He stated:

> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**
>
> None of the professional medical opinions of record indicate that the claimant's impairments meet or equal the criteria of a listed

---

[4] Admin. R. at 24 (Finding No. 3).

impairment, nor does the objective medical evidence of record indicate as much.[5]

The ALJ did not recite any particular Listed Impairments, nor did he set forth specific criteria, or discuss particular evidence in the record in support of his determination.

When assessing Hartman's RFC, the ALJ reviewed and discussed the opinions of two medical professionals. The first, Dr. Aaron Pugh, a state agency consultant and a doctor of osteopathy,[6] examined Hartman once, in early 2009, when she was thirty weeks pregnant with her second child.[7] Dr. Pugh stated that Hartman's physical exam was within normal limits, but remarked that she had some limitations on her ability to lift and stand.[8] The ALJ afforded his opinion "some weight" when determining Hartman's RFC.

The ALJ also reviewed and discussed the opinions of Dr. Paul Schneider, a Board Certified rheumatologist who had been treating Hartman for four years.[9] Four months prior to the hearing before the ALJ, Dr. Schneider provided Hartman's counsel a detailed letter in which he recounted Hartman's medical history, treatment, and his observations concerning her condition, remarked that she had been "fairly refractory" to an aggressive treatment regimen, and expressed concerns about her long-term prognosis.[10] He concluded: "At the present time I believe she is unable to be

---

[5] Admin R. at 26.

[6] Admin. R. at 195.

[7] Admin. R. at 195-97

[8] Admin. R. at 197.

[9] Admin. R. at 385; *see also* Admin. R. at 210-251, 307-308, 360-84 (treatment records).

[10] Admin. R. at 385-87.

gainfully employed and feel that her therapy and medical monitoring are such that she would be unable to work an 8-hour day/40-hour week."[11]

The ALJ remarked that Dr. Schneider's opinion that Ms. Hartman was not presently able to work a 5-day/40-hour week at the present time was "very vague," noting that Dr. Schneider "did not opine at what point Hartman became unable to work a 5-day/40-hour week, nor did he state how long it will be until the claimant can work a 5-day/40-hour week." He found, however, that "Giving the claimant the benefit of the doubt, it would be expected that claimant could have some limitations from her above mentioned conditions." The ALJ noted that he accounted for these limitations in "the very restrictive residual functional capacity assessed herein."[12]

### III. STANDARDS OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo,* nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. § 405(g), *Foster v. Comm'r of Soc. Sec.,* 279 F.3d 348, 353 (6th Cir.2001), and whether the ALJ employed the proper legal standards in reaching his conclusion. *Landsaw v. Sec'y of Health and Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

---

[11] Admin. R. at 387.

[12] Admin. R. at 27.

# IV. CONCLUSIONS OF LAW

## A. The ALJ's Analysis of Whether Ms. Hartman's Impairments Met or Medically Equaled any of the Listed Impairments

The magistrate judge concluded that

The ALJ committed an error of law when he failed to provide any analysis or discussion, or even to identify which listings he considered (much less their criteria), in reaching his conclusion that Ms. Hartman did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. In this instance, that failure was not harmless error, and remand is required.[13]

In light of the facts of this case, the court disagrees with this conclusion of the magistrate judge. No Listed Impairment was identified by the claimant before the ALJ, before the magistrate judge, or before this court. The claimant has not identified any medical evidence to support a finding that the claimant meets the requirements of a Listed Impairment.

The governing statute is clear that any decision involving "a determination of disability and which is in whole or in part unfavorable ... shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b)(1). The purpose of this provision is to ensure effective and meaningful judicial review. However, this court has found nothing in the caselaw that suggests that an ALJ must divine arguments for an analysis of Listed Impairments, or ferret out evidence not urged by a claimant in support of a Listed Impairment. To find otherwise would be to wholly emasculate the burden borne by the claimant to demonstrate that her impairments meet or medically equal a Listed Impairment. Instead, we find that where no argument is made for a finding of disability under a Listed Impairment, it is sufficient if, having

---

[13]DN 9, p. 5.

reviewed the record in its entirety, the ALJ finds summarily that no medical evidence supports any Listed Impairment, and concludes adversely to the claimant at the third step. *Malone v. Commissioner of Social Security*, No. 12-3028, 2012 WL 5974463 (6th Cir. Nov. 29, 2012).

In any given case, a claimant need not, and in many cases has no ground to, claim that her severe impairments meet or medically equal a Listed Impairment. Hartman did not identify any Listed Impairment in this case. Further, she did not identify a Listed Impairment in her Fact and Law Summary in this appeal, despite raising a generic challenge that the ALJ's findings were deficient at the third step of the evaluation. Even in the face of the *Commissioner's* identification of Listing 14.09(A)(2) (Inflammatory Arthritis) as a Listing that *could have been, but was not*, argued, the claimant has not identified medical evidence to support the specific criteria of that Listing.

We do not believe that this matter requires remand, as in *Reynolds v. Commissioner of Social Security*, No. 09-2060, 2011 WL 1228165 (6th Cir. April 1, 2011). In *Reynolds*, the ALJ compared the medical evidence concerning only the claimant's severe mental impairment to the requirements for a particular associated Listed Impairment. The court found, however, that the ALJ failed to complete the analysis, noting that, "Specifically, *Reynolds claims she qualifies as disabled under subsection 1.04, Disorders of the Spine.*" *Id.* at *3 (emphasis ours). Noted that the preamble to Section 1.00 required consideration of medical equivalence, The *Reynolds* court remanded the matter to the ALJ, because he had "skipped an entire step of the necessary analysis," and the error was not harmless. The court found that the evidence that Reynolds had put forth could have met Listing 1.04. *Id.* at *4.

We find the facts of this case distinguishable from *Reynolds,* and comparable to those in *Malone v. Commissioner of Social Security*, No. 12-3028, 2012 WL 5974463 (6th Cir. Nov. 29, 2012). In *Malone*, the court stated, in pertinent part,

> Malone now argues that the ALJ erred by failing to make specific findings on the issue of whether his impairments were equivalent to one of the impairments that is listed in Appendix 1 of the regulations. He apparently argues that the ALJ should have made a specific finding on the issue of whether his musculoskeletal impairments were equivalent to the impairments that are described in Listing 1.02 of the Appendix. Malone had the burden of showing that his impairments were equal or equivalent to a listed impairment. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). To meet that burden Malone was required to point to medical signs and laboratory findings that are at least equal to a listed impairment in duration and severity. *See id.*...Malone did not argue that he had a listed impairment at his administrative hearing, even though he was represented by counsel at that time. Nevertheless, the ALJ expressly found that Malone did not have an impairment or combination of impairments that was equal or equivalent to any of the impairments that are described in Appendix 1. This finding is supported by substantial evidence in the record..."[T]he ALJ's findings of fact should not be disturbed unless we are persuaded that his findings are legally insufficient." *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986). Malone has not met that burden here.

*Malone*, *id*. at *1-2.

As in *Malone*, no specific Listing was specified by Hartman. More importantly, as found by the ALJ, Hartman has not identified medical evidence which could satisfy any Listed Impairment.

The court is cognizant of the fact that

> Social security proceedings, unlike judicial ones, are inquisitorial, not adversarial. *See, e.g., Sims v. Apfel*, 530 U.S. 103, 110-11, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)(plurality). Consequently, the ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 111, 120 S.Ct. 2080 (*citing Richardson v. Perales*, 402 U.S. 389, 400-401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). This court has also long recognized an ALJ's obligation to fully develop the record. *Lashley v. Sec'y of Health & Human Servs.,*, 708 F.2d F.2d 1048, 1051 (6th Cir. 1983)(noting that an ALJ has "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing...")(*citing Richardson*, 402 U.S. at 411, 91 S.Ct. 1420).

*Wright-Hines v. Commissioner of Social Security*, 597 F.3d 392, 397 (6th Cir. 2010 (White, J., concurring and dissenting). We believe that the claimant received a full and fair hearing. Hartman does not contend otherwise. Further, the ALJ's duty to investigate the facts and develop the arguments should not be expanded to require the ALJ to assume the role of advocate for the claimant.

However, were we to find that the Commissioner failed to adequately articulate his reasoning for his finding at the third step, remand is unwarranted, as the error was harmless. The Commissioner argued in his Fact and Law Summary and in his objections to the magistrate judge's report that there is no evidence in the record to support a finding that Hartman was disabled under Listing 14.09(A)(2). The Commissioner has opined that this section is the only potentially relevant Listed Impairment.

To establish disability under Listing 14.09(A)(2), a claimant must show:

A. Persistent inflammation or persistent deformity of:

...2. One or more peripheral joints in each upper extremity in the inability to perform fine and gross movements effectively [Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities. To use their upper extremities effectively, an individual must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2c].

20 C.F.R. p. 404, subpt. P, app. 1, § 14.09(A).

Hartman bears the burden of showing that she meets all of the criteria of the Listed Impairment. *Johnson v. Astrue*, 2009 WL 331469, *2 (E.D.Ky. 2009), *citing Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986); *Hale v. Sec'y of Health and Human Services*, 816 F.2d 1078 (6th Cir. 1987)("lack of evidence indicating the existence of all the requirements of [an appendix listing]

provides substantial evidence to support the Secretary's finding that the claimant did not meet the Listing" (citing *King v. Heckler*, 742 F.2d 968 (6th Cir. 1984)). Hartman does not identify any applicable section or record evidence to support a finding of disability under that section. Rather, she states that "listing 14.09...is a detailed and lengthy listing" that covers a "vast array of disorders...," citing 14.00(D)(6)(a). She then recites select language from section 14.00(D)(6)(e)(ii) to the effect that "listing-level severity"is shown by "various combinations of complications of one or more major peripheral joints or other joints, such as...repeated manifestations..." Response, pp. 3-4. She has taken this language wholly out of context. In full, this provision states:

> Listing-level severity is shown *in 14.09B, 14.09C2, and 14.09D* by inflammatory arthritis that involves various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, *and constitutional symptoms or signs.* Extra-articular impairments may also meet listings in other body systems.

20 CFR 404, subpt. P, Appx. 1, 14.00(D)(6)(e)(ii)(emphasis ours).

By its terms, section 14.00(D)(e)(ii) does not apply to impairments under 14.09(A). Therefore, reference to this provision does not answer the Commissioner's argument that there is a lack of evidence to support a finding of disability under section 14.09(A). As already noted, Hartman has not identified any other applicable Listing herself, nor has she identified evidence arguably satisfying such. Further, as explained in section 14.00(D)(6)(a),

> a. *General*. The spectrum of inflammatory arthritis includes a vast array of disorders that differ in cause, course, and outcome. Clinically, inflammation of major peripheral joints may be the dominant manifestation causing difficulties with ambulation or fine and gross movements; there may be joint pain, swelling, and tenderness. The arthritis may affect other joints, or cause less limitation in ambulation or the performance of fine and gross movements. However, in combination with extra-articular features, including constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss), inflammatory arthritis may result in extreme limitation.

This general section (14.00(D)(6)(a)) read in conjunction with 14.09 makes clear that despite the varied causes, courses and outcomes of inflammatory arthritis, Listing-level severity requires a showing of more than repeated manifestations of the condition. There must be: (A) persistent inflammation or persistent deformity with extreme limitation of the ability to walk or extreme loss of function of both upper extremities, (B) inflammation or deformity with moderate involvement of 2 or more organs or body systems and at least two constitutional symptoms or signs, (C) ankylosing spondylitis or other spondyloarthropathies involving the cervical spine, or (D) repeated manifestations with at least two constitutional symptoms or signs and certain ma marked limitation in activities of daily living, social functioning, or performance of tasks. 14.09(A) - (D).

In arguing that she meets the requirements of a Listed Impairment, Hartman relies on a letter from her treating rheumatologist Dr. Schneider, which recounts Hartman's medical history, symptoms, and the doctor's most recent impressions. Hartman quoted from that letter, and argued, in pertinent part:

> In June 2009, post child-birth, x-rays revealed loss of joint space and "irreversible joint damage." (Tr. 386.)...In November 2009, Ms. Hartman "continued to show active synovitis at the wrists and small joints of the hands, as well as significant problems with her feet." (Tr. 386.)...The ALJ bases his opinion on a skewed review of Ms. Hartman's medical record and a misrepresentation of her testimony. She has not improved since her pregnancy. Ms. Hartman's condition has worsened to such a extent that she is experiencing permanent damage to her bones. The ALJ's opinion is an attenuated contortion of the record and of Dr. Schneider's findings and treatment.[14]

Dr. Schneider's letter recounted the severe impairments from which Hartman suffers. That she suffers from a number of severe impairments is undisputed. The ALJ found her rheumatoid arthritis and rotator cuff tendonitis to be severe impairments. However, this falls short of

---

[14]DN 7, pp. 5-6.

establishing that her rheumatoid arthritis satisfies all of the criteria of a Listed Impairment or that is equal in severity and duration to the criteria of a Listed Impairment.[15]

Section 14.09(A)(2), identified by the Commissioner, requires evidence of an extreme loss of function in both upper extremities. Dr. Schneider stated in his letter that she has "irreversible damage to her wrists" which is "evidence[d] on x-rays."[16] "[A]t her examination on 8/24/10, she continued to have limited range of motion of both wrists and prolonged morning stiffness."[17] While noting that she "continued to have active disease,"[18] and that he has "concerns about her long-term prognosis,"[19] there is no indication by Dr. Schneider that she has extreme loss of function, as required under 14.09(A)(2).

Section 1.00B2b, to which 14.00 refers, indicates, in part, that "examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches, or two canes,...the inability to carry out routine ambulatory activities...[E]xamples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." The limitations identified by Schneider are that she has a limited range of motion in her

---

[15] Hartman does not discuss rotator cuff tendonitis in arguing that she meets a Listed Impairment. Therefore, we do not discuss it here.

[16] Admin. R. at 387, Schneider Letter, p. 3.

[17] *Id.*

[18] *Id.*

[19] *Id.*

wrists and has prolonged morning stiffness. These limitations clearly do not meet the extreme limitations required for a finding of disability under Listing 14.09(A).

### B. The ALJ's Decision to Give Greater Weight to the Opinion of a State Agency Consultant than Ms. Hartman's Treating Specialist when Determining Ms. Hartman's Residual Functional Capacity

The ALJ is not required to adopt from any medical source -- even a highly trained medical doctor specializing in rheumatology with a long-standing treatment relationship with the claimant -- any conclusion reserved for the ALJ (*i.e.*, whether the claimant "is unable to be gainfully employed"[20]). *See* 20 C.F.R. § 404.1527(e). An ALJ may appropriately accept functional limitations suggested by a doctor of osteopathy who evaluated the claimant only one time, and during her third trimester of pregnancy, so long as those findings were supported by substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d).

The ALJ found that Hartman's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the residual functional capacity assessment conducted by Aaron Pugh, D.O. on March 24, 2009. At the time of the evaluation, Hartman was pregnant with her second child and thus not taking only prednisone and low-dose Tylenol. Dr. Pugh found her physical examination to be within normal limits. As noted by the ALJ, Dr. Pugh noted that she had no problems with sitting, was able to stand for approximately five minutes before developing pain in her feet and ankles. She could walk a quarter

---

[20] Admin. R. at 387.

of a mile without any distress and was able to carry up to five pounds due to wrist pain and weakness.[21]

Hartman takes issue with the ALJ's affording "some weight [to Dr. Pugh's assessment] in formulating the residual functional capacity assessed herein."[22] She contends that Dr. Schneider's letter written in September, 2010 should have been given controlling weight by the ALJ, as it contains the most recent and comprehensive assessment of her condition. Dr. Schneider's letter states that "[m]ost of the problems became more evident by June 2009 after she had delivered a second healthy baby while on prednisone, which is to say she resumed Enbrel and remained on prednisone along with NSAIDs."[23] He noted that x-rays evidenced that her disease had progressed through the time of her pregnancy and had caused irreversible bone damage.[24] The ALJ did not discredit Schneider's medical findings that her disease had progressed during her second pregnancy and that she continued to have active disease, or that she had some limited range of motion in her wrists and prolonged stiffness. The ALJ stated, in fact, that "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."[25] What he discounted was the extent to which Hartman's symptoms caused the intensity, persistence and limiting effects she claimed.

Dr. Schneider's findings did not address Hartman's physical limitations beyond the statement that she had some limited range of motion and prolonged morning stiffness. Rather, Dr. Schneider

---

[21]Admin. R. at 26, ALJ Decision, p. 5.

[22]*Id.*

[23]Admin. R. at 386, Schneider Letter, p. 2.

[24]*Id.*

[25]Admin. R. at 226, ALJ Decision, p. 5.

stated that he believed that she was unable to work at that present time, as he felt that her therapy and medical monitoring would interfere with her ability to work an 8-hour day/40-hour week. The record evidence concerning her treatment was that she takes an Orencia infusion once per month along with certain blood work, and she sees her rheumatologist once every other month. The ALJ found that Dr. Schneider's opinion that the claimant is unable to work a 5-day/40-hour week 'at the present time' is very vague. Dr. Schneider did not opine at what point the claimant became unable to work a 5-day/40-hour week, nor did he state how long it will be until the claimant can work a 5-day/40-hour week (Exh 15F), p.3)."[26]

The ALJ went on to discuss other evidence in the record:

The record contains physical residual functional capacity opinions by non-treating state agency physicians. These assessments partially support the residual functional capacity reached in this decision. It should be noted that the undersigned gave an even more restrictive residual functional capacity (Exhs 3F and 7F). In sum, the claimant's allegations and contentions regarding the nature and severity of the impairment-related symptoms and functional limitations are found to be partially credible. While the allegations regarding the nature of these symptoms are found to be supported within the medical and other evidence of record, the contentions regarding the severity of, and the related function restrictions are not supported. The undersigned has carefully read and the [sic] considered all the evidence of record, regardless of whether it is specifically cited in the decision, including the claimant's function report and find the residual functional capacity set forth above is more consistent with the appropriate medical findings and the overall evidence of record than the allegations made by the claimant.[27]

The ALJ found that

The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps and stairs, but never ladders, ropes or scaffolding. The claimant can perform occasional balancing, stooping, kneeling or crouching. The claimant would be

---

[26]Admin. R. at 227, ALJ Decision, p. 6.

[27]*Id.*

>limited in reaching all directions including overhead), handling (gross manipulation) and fingering (fine manipulation). The claimant should avoid concentrated exposure to extreme cold.[28]

The ALJ went on to explain

>In terms of the claimant's alleged debilitating physical conditions, the evidence does not support that these conditions are as limiting as alleged. The diagnostic findings have been mild at best. The claimant has received only treatment in the form of medication, and there has not been any extensive treatment proposed such as surgical intervention. The claimant is not currently undergoing physical therapy. Also, during a recent medical appointment on October 15, 2010, it was noted the claimant exercises 5 times a week (Exh 17F, p. 1), which is not consistent with the limitations she placed on herself during her testimony at the hearing.

When asked about exercise, Hartman told the ALJ that she did not exercise five times per week, but only three times per week, participating in water aerobics.

The court finds that substantial evidence exists in the record to support the ALJ's decision regarding her RFC. Although Hartman makes much of the fact that Dr. Pugh saw her only once and while she was pregnant, it was with a few months of her delivery, relatively close in time to the point at which Dr. Schneider stated that Hartman's "problems became more evident."[29] Dr. Pugh also noted that Hartman was not then on any disease-modifying drug.[30] He found at that time that she had normal range of motion in her shoulders, elbows, wrists, fingers, cervical spine, thumbs; hips, ankles, knees, and lumbar spine. She had +5/5 bilateral upper and lower extremity muscle strength. She had no problems with fine motor skill deficits. She had no problems sitting, but could only

---

[28] Admin. R. at 24-25, ALJ Decision, pp. 3-4.

[29] Admin. R. at 386.

[30] Admin. R. at 197, Pugh Consultative Exam, p. 3.

stand five minutes before developing pain in her feet and ankles. She could walk one quarter of a mile without distress and could carry up to five pounds.[31]

We are persuaded, in part, by self-assessments of Hartman's activities and limitations. Hartman's own description of her activities in a background questionnaire completed on January 4, 2011 indicates that she can sit for thirty minutes at a time, cook with help, wash dishes if they are not heavy, lift less than ten pounds, mop and vacuum the floor in small amounts, drive a car on most days and shop, but with difficulty.[32] There is also an undated, unsigned form entitled "Disability Report - Appeal - Form SSA-3441." This form was apparently completed some time after June 9, 2009, as it states that the date of the last Disability Report was June 9, 2009. This report indicates that "[her] wrists are worse," and the approximate date of the change in her condition was July 1, 2009. She stated that she has not had any medical tests for her condition since the last disability report, nor did she have any scheduled. She stated that her condition has "no affect" on her ability to care for her personal needs.[33]

On June 23, 2009, Hartman completed a Fatigue Activities of Daily Living Questionnaire. She stated that she sometimes needed help with personal needs and grooming in the morning if the pain was severe, and that she needed some assistance with household maintenance, cooking and shopping.[34] She indicated that she received assistance from her husband with lifting pots and pans, opening jars, and cutting up meats or vegetables when cooking, carrying laundry baskets up and down the stairs for laundry, putting away dishes that are too heavy, and helping with chores which

---

[31]*Id.*

[32]Admin. R. at 184-185.

[33]Admin. R. at 178.

[34]*Id.*

were too difficult to complete due to her wrist and hand pain.[35] She could do small grocery trips, avoiding the purchase of heavy items.[36] She stated, "My day usually consists of caring for my 2-year-old and 2-month-old by fixing and feeding them their meals, changing their diapers, dressing them, and playing with them. I also attempt to do some light cleaning, such as cleaning up after meals, laundry, and picking up toys. Currently my husband is home with me for the summer and is able to help with me [sic] a lot of the cleaning, grocery shopping, and errands, such as doctor's appointments."[37] Hartman testified at the hearing before the ALJ that she does water aerobics three times per week to keep her range of motion and mobility.[38]

We find that the ALJ's determination to partially credit Hartman's statements concerning her symptoms is amply supported by the record and takes into account Dr. Schneider's more recent assessment concerning the progression of her condition, corresponding diagnostic findings, and his concern over the minimal success with drug therapies.

The court having made a *de novo* determination of those portions of the magistrate judge's report to which objection was made, and having rejected said report to the extent and for the reasons set out herein, judgment will be entered in this matter affirming the decision of the ALJ.

**IT IS SO ORDERED.**

August 2, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**

---

[35]*Id.*

[36]*Id.*

[37]*Id.*

[38]Admin. R. at 42, TR 10.